### THE C. GALLAGHER.

### THE SPARTAN.

#### (Circuit Court of Appeals, Second Circuit. November 12, 1919.)

#### No. 12.

1. COLLISION ⊗═══95(2)—OVERTAKING TUG WITH TOW SOLELY IN FAULT.

   An overtaking tug, with tow, which unnecessarily attempted to pass between two other tows, *held* solely in fault for collision between her tow and another in Long Island Sound.

2. COLLISION ⊗═══95(1)—CUSTOM VARYING FROM NARROW CHANNEL RULE JUSTIFIED.

   A general practice of west-bound tows in Long Island Sound, when approaching North Brothers Island on a flood tide, to keep to the port side of the channel, to give east-bound tows room to round the island and pass the railroad piers on the north safely, *held* justified, and not in violation of the narrow channel rule.

Appeal from the District Court of the United States for the Southern District of New York.

Libel for collision by Rogers & Hubbard, Incorporated, against the steam tug Spartan, claimed by the Hartford & New York Transportation Company, with petition to limit liability by the Goodwin-Gallagher Sand & Gravel Corporation, owner of the tug C. Gallagher, as well as a libel against the Spartan. Libel by E. E. L. Hammer, Public Administrator of Bronx County, as administrator of F. F. Borch, deceased, against the Spartan. From the decree, the claimant of the Gallagher appeals. Reversed.

Foley & Martin, of New York City (William J. Martin and G. V. A. McCloskey, both of New York City, of counsel), for appellant.

Haight, Sandford & Smith and Ellsworth J. Healy, all of New York City (C. B. Smith and E. E. L. Hammer, both of New York City, of counsel), for appellee Hartford & N. Y. Transp. Co.

Harrington, Bigham & Englar, of New York City, for appellee Rogers & Hubbard, Inc.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. August 18, 1915, about 2:30 p. m., the tug Spartan, bound west, with four schooner barges abreast in the first tier and one tailed on in the second tier, behind the starboard

---

⊗═══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

barge in the first tier, had just rounded North Brothers Island in Long Island Sound. She was rapidly overtaking the tug Robert Robinson, with a hawser tow of five boats, three in the first and two in the second tier. At the same time the tug C. Gallagher, close to Riker's Island, was approaching North Brothers Island on her way west with the Goodwin-Gallagher sand-laden scows No. 74, No. 36, No. 44, and No. 8 on hawsers tandem. The tide was flood and the day clear.

The Robinson, as she passed around North Brothers Island, steered a course which passed the Gallagher, which was heading for the black buoy on the north end of the island, starboard to starboard. The Spartan, when close to the Robinson's tow, ported to pass with her own tow, which was 128 feet wide and in all some 600 feet long, between the Robinson's and Gallagher's tows.

Seeing that the clearance was very small, the Gallagher starboarded and the Spartan slowed, with the result that her tow sheered toward the Gallagher's tow, and the Gallagher's tow was swung by a very weak tide coming through the narrow channel between North and South Brothers Islands, and sheered slightly towards the Spartan's tow. Thereupon the Spartan ported, with a view to bring the strain on her starboard hawser, to break her tow's sheer, and then starboarded to straighten the tow out. This is a familiar maneuver, making a course something like a reversed curve, sometimes described as snapping the whip. Notwithstanding this, No. 18, starboard scow in the Spartan's first tier, struck a glancing blow on the starboard side of No. 74, the first barge in the Gallagher's tow, shoving it aside and breaking the line between it and the next boat, No. 36. No. 18 then struck the starboard corner of the stern of No. 36, which was towing stern first, overturning her with her cargo, then striking the next boat, No. 44, and breaking the line between her and the last boat, No. 8, and then overturning No. 8, whose master, Frederick F. Borch, was drowned.

There was plenty of clear water for the Spartan to pass between the Robinson's tow and the New York shore, and the effort to pass between the Robinson's and the Gallagher's tows was reckless in the extreme.

Rogers & Hubbard, Incorporated, owners of the cargo on No. 18, filed a libel against the Spartan. The Goodwin-Gallagher Sand & Gravel Corporation, owner of the tug Gallagher, filed a petition to limit its liability, and also a libel against the Spartan to recover damages to the barges and cargo in her tow. E. E. L. Hammer, public administrator of Bronx county, as administrator of F. F. Borch, deceased, filed a libel against the Spartan to recover damages for his death. The cases were tried together, and the District Judge found both vessels at fault and the owner of the tug Gallagher entitled to limit liability. The owner of the tug Gallagher appealed from each decree.

The District Judge held the Spartan at fault for attempting to pass between the tows of the Robinson and Gallagher, instead of slowing until the Gallagher had passed, and the Gallagher for navigating on the port side of the channel in violation of article 25 of the Inland Regulations (Act June 7, 1897, c. 4, § 1, 30 Stat. 101 [Comp. St. § 7899]).

[1, 2] We think the Spartan was solely at fault. Article 25 requires steamers to keep the starboard side of a narrow channel "when it is safe and practicable." The testimony is quite convincing that hawser tows west bound, in approaching North Brothers Island on a flood tide navigate on the port side of the channel in order to give east bound hawser tows room to round North Brothers Island and pass the railroad piers on the north side in safety. The flood tide in the main channel sets on Oak Bluff and the New York side opposite the northern end of North Brothers Island, and is then deflected slightly toward Riker's Island; this set being somewhat counteracted by the direction of the weaker tide coming through the shallow channel between North Brothers Island and South Brothers Island. We regard this as a reasonable practice, justifying a departure from the general rule described in article 25 and have recognized similar practices at other points. The Three Brothers, 170 Fed. 48, 95 C. C. A. 322; The Transfer No. 21, 248 Fed. 459, 160 C. C. A. 469.

The proctors for the Spartan cite two decisions of the late Judge Adams in the District Court that at this particular point steamers must conform to article 25. The Transfer No. 10 (D. C.) 138 Fed. 221; The Abram F. Skidmore (D. C.) 160 Fed. 265. In those cases there was no evidence of the practice proved in this case, and the decision of the same judge arising out of a collision at a bend in the Harlem River in the later case of the Three Brothers (D. C.) 162 Fed. 388, was reversed (170 Fed. 48, 95 C. C. A. 322), on the ground that local conditions justified a departure from article 25.

Assuming that the Gallagher was on the wrong side of the channel, that fault did not contribute to the collision, because the fact was obvious, and made it the plain duty of the Spartan to pass upon the port side of the Robinson's tow, instead of forcing a passage between the two tows.

The District Judge awarded the sum of $5,000 to Hammer, administrator of Borch, deceased, who was a man of 65 years of age, in good health, of good habits, and earning at the highest $55 a month. His wife had been living for six years previous to his death in Norway. The couple had no children, and there is no accurate evidence of the amount he was in the habit of sending his wife. If we concede it to have been $25 a month, which would certainly have been most liberal, the present value of an annuity of $300 would be $2,400; his expectation of life by the mortality tables being less than eight years. This amount, we think, covers in full the pecuniary damages sustained by the widow, as provided for in section 1904 of the New York Code of Civil Procedure. We cannot award more than the intestate could have paid out of his wages because of the present high cost of living.

The decree is reversed, with directions to the court below to enter a decree in favor of the libelants Rogers & Hubbard, Incorporated, and the Goodwin-Gallagher Sand & Gravel Corporation, for their damages as found against the tug Spartan, with costs, and in favor of Ernest E. L. Hammer, public administrator of the county of the Bronx, as administrator of the estate of Frederick F. Borch, deceased, in the

sum of $2,400, with interest from the date of his intestate's death. Costs of this court to Rogers & Hubbard, Incorporated, and to the Goodwin-Gallagher Sand & Gravel Corporation, against the Spartan.